IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

**JAYLIN BONDS, individually and on behalf of all
others similarly situated**                                                                **PLAINTIFF**

v.                                    Case No. 3:18-cv-00189 KGB

**LANGSTON COMPANIES, INC.**                                                              **DEFENDANT**

## ORDER

Plaintiff Jaylin Bonds brings this proposed collective action against defendant Langston Companies, Inc. ("Langston"). Mr. Bonds alleges that the payroll system used by Langston rounded time worked in a way that resulted in several hours of unpaid work each month for hourly-paid employees, including weeks hourly-paid employees worked more than 40 hours, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and the Arkansas Minimum Wage Act ("AMWA"), Ark. Code Ann. § 11-4-201, *et seq*.

Before the Court is Mr. Bonds's motion for conditional certification, for disclosure of contact information, and to send notices (Dkt. No. 7). Langston responded in opposition to the motion (Dkt. No. 11), and Mr. Bonds replied (Dkt. No. 12). For the reasons that follow, the Court grants in part and denies in part Mr. Bonds's motion for conditional certification, for disclosure of contact information, and to send notices (Dkt. No. 7).

### I.   Factual Background

Mr. Bonds is a former employee of Langston who worked as a manufacturing plant employee from around March 2018 until October 2018 (Dkt. No. 7-6, ¶ 4). Mr. Bonds asserts that his job duties included performing the manual labor necessary to the manufacturing and finishing process, including operating the machinery to manufacture and finish various bags (*Id.*, ¶ 6). Mr. Bonds alleges that the payroll system used by Langston rounded time worked by hourly-paid

manufacturing plant employees in favor of Langston (*Id.*, ¶ 10). Mr. Bonds contends that the time that was rounded in Langston's favor resulted in several hours of unpaid work each month for hourly-paid employees, including weeks hourly-paid employees worked more than 40 hours (*Id.*, ¶ 12). In his present motion, Mr. Bonds seeks conditional certification for the following collective: "[a]ll hourly-paid manufacturing plant employees who worked more than thirty nine (39) hours in any week for [d]efendant[] at any time since October 5, 2015" (Dkt. No. 7, ¶ 3).

## II.     Analysis

### A.     FLSA Conditional Certification

Under the FLSA:

> An action to recover the liability prescribed . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

Many district courts in the Eighth Circuit utilize a two-step approach in collective action cases. At the notice stage, the Court must determine, based on the pleadings and affidavits, whether notice should be given to potential class members. The key issue is whether the members of the proposed class are similarly situated. If the Court allows notification, then a representative class is conditionally certified, and Mr. Bonds will send notice to the putative opt-in plaintiffs. At the second stage, the Court determines whether to decertify the class once discovery is largely complete. *Smith v. Frac Tech Services, Ltd.*, No. 4:09-cv-679, 2009 WL 4251017, at *2 (E.D. Ark. Nov. 24, 2009) (citation omitted). This Court has previously adopted this approach. *See McChesney v. Holtger Bros., Inc.*, No. 4:17-cv-824, 2019 WL 118408, at *2 (E.D. Ark. Jan. 7, 2019); *Watson v. Surf-Frac Wellhead Equip. Co.*, No. 4:11-cv-843, 2012 WL 5185869, at *1 (E.D.

2

Ark. Oct. 18, 2012); *Cruthis v. Vision's*, No. 4:12-cv-244, 2013 WL 4028523, at *1-2 (E.D. Ark. Aug. 7, 2013).

"'To establish that conditional certification is appropriate, the plaintiff[] must provide some factual basis from which the court can determine if similarly situated potential plaintiffs exist.'" *Tegtmeier v. PJ Iowa, L.C.*, 208 F. Supp. 3d 1012, 1018 (S.D. Iowa 2016) (alteration in original) (quoting *Robinson v. Tyson Foods, Inc.*, 254 F.R.D. 97, 99 (S.D. Iowa 2008)). Mr. Bonds's burden at the notice stage is lenient and may be met by making a "modest factual showing," typically by the submission of affidavits, that he and the putative class were victims of a common decision, policy, or plan of the employer that affected all class members in a similar fashion. *Resendiz-Ramirez v. P & H Forestry, LLC*, 515 F. Supp. 2d 937, 941 (W.D. Ark. 2007) (citing *Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1106-08 (10th Cir. 2001)). However, while this is a "lenient standard, . . . 'more than mere allegations' are required." *Tegtmeier*, 208 F. Supp. 3d at 1018 (quoting *Robinson*, 254 F.R.D. at 99).

"Typically, district courts will make the determination of whether to conditionally certify a class based solely on the affidavits presented by the plaintiffs." *Huang v. Gateway Hotel Holdings*, 248 F.R.D. 225, 227 (E.D. Mo. 2008) (citation omitted). The Court can consider a variety of non-exclusive factors in determining whether employees are similarly situated. Such factors include: (1) whether the employees held the same job title; (2) whether they worked in the same geographic location; (3) whether the alleged violations occurred during the same time period; (4) whether the employees were subjected to the same policies and practices and, if so, whether the policies and practices were established in the same manner and by the same decision maker; and (5) the extent to which the acts constituting the alleged violations are similar. *Stone v. First Union Corp.*, 203 F.R.D. 532, 542-43 (S.D. Fla. 2001) (citing *Hipp v. Liberty Nat'l Life Ins. Co.*,

252 F.3d 1208, 1217 (11th Cir. 2001); *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1090, 1097-99 (11th Cir. 1996)). "The Court does not need to determine whether class members are *actually* similarly situated until the 'merits stage' of the litigation, when defendants typically move to decertify the class." *Tinsley v. Covenant Care Servs., LLC*, No. 1:14-cv-00026-ACL, 2015 WL 1433988, at *1 (E.D. Mo. Mar. 27, 2015) (emphasis in original) (citing *Littlefield v. Dealer Warranty Servs., LLC*, 679 F. Supp. 2d 1014, 1016-17 (E.D. Mo. 2010)).

In a sworn affidavit, Mr. Bonds avers that he worked as an hourly-paid manufacturing plant employee in Arkansas for Langston from about March 2018 until October 2018 (Dkt. No. 7-6, ¶ 4). Mr. Bonds alleges that his job duties included performing the manual labor necessary to the manufacturing and finishing process, including operating the machinery to manufacture and finish various bags (*Id.*, ¶ 6). Mr. Bonds asserts that the payroll system used by Langston rounded the time worked by himself and other hourly-paid manufacturing plant employees in favor of Langston (*Id.*, ¶ 10). Mr. Bonds asserts that the amount of time that was rounded in Langston's favor resulted in several hours of unpaid work each month for himself and other hourly-paid employees, including during weeks he and other hourly-paid employees worked more than 40 hours (*Id.*, ¶ 12).

Mr. Bonds estimates that there are at least 200 other individuals who work or have worked as hourly employees for the Langston's facility in West Memphis. Arkansas, since October 15, 2015; however, he admits that he does not know the exact number of employees (*Id.*, ¶ 13). Mr. Bonds also admits that he is unable to state the exact number of potential members of the FLSA collective action, but he believes that the group exceeds 500 persons (Dkt. No. 1, ¶ 42). He believes, based on his experience and conversations with other hourly-paid manufacturing plant employees, that others would want to join this lawsuit if notice were sent to them (Dkt. No. 7-6, ¶

14). Mr. Bonds submits in further support of his motion the sworn affidavit of Holly Price (Dkt. No. 7-7). Ms. Price attests to similar factual statements in her declaration. Mr. Bonds seeks to certify a nationwide class, representing that Langston operates six manufacturing facilities worldwide, including five in the United States and one facility in West Memphis, Arkansas (Dkt. No. 1, ¶19).

Langston opposes conditional class certification (Dkt. No. 11). Langston contends that Mr. Bonds failed to demonstrate that he is similarly situated to potential opt-in plaintiffs because he does not have any personal knowledge not rooted in hearsay as to Langston's pay practices generally or as applied to hundreds of other employees nationwide (*Id.*, at 6, 8). Langston also argues that Mr. Bonds fails to provide evidence that Langston engaged in a nationwide practice of failing to pay Mr. Bonds and other similarly situated individuals minimum wage or the correct overtime compensation (*Id.*, at 8).

The Court finds that Mr. Bonds has carried his lenient burden of establishing at this stage of the litigation that he is similarly situated to hourly-paid manufacturing plant employees who worked more than 39 hours in any week for Langston at any time since October 5, 2015. Mr. Bonds's affidavit demonstrates that he was employed as an hourly-paid manufacturing plant employee from March 2018 until October 2018 and is personally familiar with other hourly-paid manufacturing plant employees who were employed by the defendants during that time (Dkt. No. 7-6, ¶¶ 4, 14). His affidavit asserts that Langston's payroll system rounded time worked by him and other hourly-paid manufacturing plant employees in a way that resulted in several hours of unpaid work each month (*Id.*, at ¶ 10).

Further, in his complaint, Mr. Bonds alleges that Langston operates six facilities in the United States, including the one in West Memphis, Arkansas, where he worked (Dkt. No. 1, ¶19).

He asserts that Langston "has one corporate headquarters in Memphis that centralizes all pay, time and human resource policies so that they are the same across its facilities." (*Id.*, ¶20). He maintains that Langston "has unified control over employees and exercises authority over Plaintiff and other employees, sets the pay policy applicable to Plaintiff and other employees and controls the work schedule of Plaintiff and other employees." (*Id.*, ¶24). In its answer, Langston admits all of these allegations (Dkt. No. 4, ¶¶ 19, 20, 24).

The Court concludes that Mr. Bonds's affidavit, along with the allegations in his complaint that Langston admits, offers evidence sufficient to show that all members of the proposed class were subject to a common policy or plan: Langston's alleged use of a payroll system that rounded the time worked by hourly-paid employees in a manner that resulted in several hours of unpaid work each month for hourly-paid employees. *See McClean v. Health Sys.*, No. 11-03037-cv-s-DGK, 2011 WL 6153091, at *6-7 (W.D. Mo. Dec. 12, 2011) (finding that employer's alleged policy of using a timekeeping system that unlawfully deprived employees of pay by rounding time to the quarter hour was sufficient for conditional certification, even though the employees worked in 60 different facilities managed by the employer).

The Court disagrees with Langston's argument that Mr. Bonds has not met his burden to show that every manufacturing plant employee was a victim of a common policy. Based on the limited record before it, the Court determines that Mr. Bonds's affidavit, along with the allegations in his complaint that Langston admits, suffice to show that the members of the proposed class were alleged victims of a purported common policy. Moreover, Langston's argument that Mr. Bonds has failed to provide evidence that Langston engaged in a nationwide practice of failing to pay Mr. Bonds and other similarly situated individuals minimum wage or the correct overtime

compensation, "goes to the merits of the case, and need not be decided at the notice stage." *Littlefield*, 679 F. Supp. 2d 1014, 1018 (E.D. Mo. 2010).

The Court finds that Mr. Bonds has carried his lenient burden of establishing that he is similarly situated to other hourly-paid manufacturing plant employees who have worked for Langston at any time since October 5, 2015. Therefore, the Court conditionally certifies this action under the FLSA and AMWA for purposes of giving notice.

### B. Notice

Mr. Bonds requests that the Court ratify the following notice process as it pertains to potential opt-in plaintiffs: Mr. Bonds would send notice and consent to join forms (Dkt. Nos. 7-1, 7-2) *via* text message to class members' cell phone numbers (Dkt. No. 7-3), or in the alternative, *via* email or U.S. Mail (Dkt. Nos. 7-3, 7-4); and the Court would set a 90-day opt-in period. Mr. Bonds requests permission to send a reminder notice *via* U.S. Mail to potential opt-ins who do not respond within 30 days of sending the notice (Dkt. No. 7, ¶ 10). Additionally, Mr. Bonds requests that Langston be required to post the notice in a conspicuous location in the same area in which they post government-required notices (Dkt. No. 7, ¶ 11). Mr. Bonds also requests permission to include the original complaint, as well as Langston's answer thereto, if Langston so requests, along with the notice (Dkt. No. 7, ¶ 12).

The Court grants in part and denies in part Mr. Bonds's motion as it pertains to notice to potential opt-in plaintiffs. The Court grants Mr. Bonds's motion to the extent that he seeks to provide potential opt-in plaintiffs with notice *via* email. Accordingly, Mr. Bonds may send one written notice and consent form to the potential opt-in plaintiffs *via* email, as well as one follow-up written notice, *via* U.S. Mail. Mr. Bonds's proposed written notice, consent, and follow-up forms are acceptable (Dkt. Nos. 7-1, 7-2, 7-3, 7-4). The proposed email notice is acceptable to the

Court (Dkt. No. 7-3, at 1). The Court denies without prejudice Mr. Bonds's request to send notice, consent, and follow-up information to the potential opt-in plaintiffs *via* text message. The Court also denies without prejudice Mr. Bonds's request to require Langston to post the notice and to include the original complaint and answer with the notice.

To facilitate notice, Langston is ordered to provide Mr. Bonds's counsel the names, including any aliases they may have gone by or go by now, last known mailing addresses, and all known email addresses, including personal and company-sponsored, for every hourly-paid manufacturing plant employee who worked for Langston any time after October 5, 2015, within 21 days of the date of this Order. The Court also directs Langston to provide such information to Mr. Bonds's counsel *via* Microsoft Word or Excel formatting. After receiving such information, Mr. Bonds shall then have 90 days to distribute notice and file opt-in consent forms with the Court.

### III. Conclusion

For the reasons discussed above, the Court grants in part and denies in part Mr. Bonds's motion for conditional certification, for disclosure of contact information, and to send notices (Dkt. No. 7). The Court conditionally certifies the following class:

> All hourly-paid manufacturing plant employees who worked more than 39 hours in any week for the defendant at any time since October 5, 2015.

To facilitate notice, Langston is ordered to provided to Mr. Bonds's counsel the names, last known mailing addresses, and all known email addresses, including personal and company-sponsored, for every hourly-paid manufacturing plant employee who worked for Langston any time after October 5, 2015, within 21 days of the date of this Order. Mr. Bonds shall have 90 days from the date Langston provides this information to distribute notice to the potential opt-in plaintiffs and file copies of the consent forms with the Court. Mr. Bonds may provide notice to the class of individuals consistent with the terms of this Order.

It is so ordered this 24th day of September, 2019.

_____
Kristine G. Baker
United States District Judge